# In the United States Court of Federal Claims

No. 20-1258T
Filed: January 18, 2022

|  |
|---|
| **ALAN C. DIXON,**<br><br>　　　　　*Plaintiff*,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>　　　　　*Defendant*. |

### ORDER

     Alan C. Dixon ("Mr. Dixon") challenges the Internal Revenue Service's ("IRS") denial of various tax refund requests. The United States moved for judgment on the pleadings. (Def's Mot. for J. ("MJOP"), ECF No. 18). Prior to addressing that motion, the Court first determines whether Mr. Dixon should be allowed leave to cure deficiencies in his original Complaint. The Court finds that granting leave to amend the Complaint does not serve the interests of justice because the amended complaint adopts new legal theories that the IRS never reviewed, and thus, the amendments would be futile. For that reason, the Court denies leave to amend.

     In his Complaint, Mr. Dixon seeks entitlement to tax refunds for 2013 and 2014.[1] (Compl. at 1, ECF No. 1). Mr. Dixon's tax refund claim has three components. These include a refund based on application of foreign tax credits, a refund for an "assessed additional tax," and a refund based on adjustment of net investment income tax. (Compl. at 6). Mr. Dixon's proposed amendments to the Complaint principally relate to the first two claims. (Mot. to Amnd. at 1–3, ECF No. 19).

     Mr. Dixon's foreign tax credit claim is linked to his work as the CEO and managing member of Dixon Advisory, USA, a subsidiary of the entity formerly known as Dixon Advisory Group Pty Ltd. (Compl. at 2–3). For the tax years in question, the majority of Mr. Dixon's income originated from dividends from Dixon Advisory Group Pty Ltd. (MJOP at 7). In early 2016, Mr. Dixon realized, as stated in his Complaint, that he could "elect to treat" Dixon Advisory Group Pty Ltd. as a partnership for federal income tax purposes after taking the necessary steps with the IRS. (Compl. at 3).

     On February 8, 2016, Mr. Dixon filed an Application for Employer Identification Number (Form SS-4) with the IRS; Mr. Dixon claims that the Form SS-4 "properly classified"

---

[1] A more detailed explanation of the relevant facts is set forth in the Court's accompanying Opinion and Order on the United States' motion for judgment on the pleadings.

Dixon Advisory Group as a partnership for U.S. federal income tax purposes. (*Id*.). Properly classifying Dixon Advisory Group as a partnership would have rendered Mr. Dixon's dividend income from Dixon Advisory Group "business income." (*Id*.) Although this might have increased Mr. Dixon's income tax liability, it would have simultaneously qualified him for a foreign tax credit on the additional income. (Pl.'s Resp. at 12, ECF No. 21).[2] Subsequently, Mr. Dixon filed amended tax returns for tax years 2013 and 2014 in which he sought foreign tax credits stemming from the company's reclassification to a partnership. (Compl. at 3). Mr. Dixon alleges that the amended tax returns reflected Dixon Advisory Group's "corrected taxable status," as a partnership. (*Id*.).

The IRS denied Mr. Dixon's foreign tax credit refund request because Mr. Dixon had not signed the amended tax returns. (Compl. at 4). Meanwhile, the IRS audited Mr. Dixon's 2013 tax returns and "assessed additional tax" with respect to that year. (*Id*.). Mr. Dixon also seeks refund of that assessed additional tax. (Compl. at 6).

Among the sundry list of adjustments that Mr. Dixon seeks to make to the original Complaint, two changes are significant. First, Mr. Dixon seeks to amend language pertaining to "the statutory classification of Plaintiff's partnership." (Mot. to Amnd. at 1). Specifically, the original Complaint routinely and consistently represented Mr. Dixon's attempts at seeking entity-classification from the IRS as "an election" to have Dixon Advisory Group's status change to a partnership.[3] The proposed Amended Complaint instead indicates that Dixon Advisory Group was statutorily classified as a partnership, by eliminating phrases such as "election to be recognized for U.S. tax purposes" and "elect partnership." (Mot. to Amnd. at 1). Mr. Dixon does not dispute what this change would signify: that he did not submit the requisite forms to request a change in Dixon Advisory Group's classification, but instead, to notify the IRS that he believed the company "should be treated as a partnership," arguably as a matter of law.[4] (*Id*.)

---

[2] Mr. Dixon could claim that, since he paid taxes on that income to the Australian government, he should be able to take a foreign tax credit for that income in the United States. (Compl. at 3). Section 901 of the U.S. Tax Code allows U.S. taxpayers to offset their U.S. income tax liabilities by the amount of foreign income taxes paid or accrued. 26 U.S.C. § 901.

[3] (*See e.g.*, Compl. at ¶ 12, stating that Mr. Dixon "needed to . . . elect to treat the entity as a Partnership."; Compl. at ¶ 13, stating that applications submitted to the IRS had the effect of classifying the company as a partnership).

[4] The United States argues that Mr. Dixon's request to change this language could only be understood as a post hoc attempt to counter the arguments raised by the United States in its motion for judgment on the pleadings. (Resp. to Mot. to Amnd. at 12, ECF No. 20). Mr. Dixon's original Complaint strongly signals his understanding that submitting Form SS-4 to the IRS should have sufficed in classifying Dixon Advisory Group as a partnership; the United States countered by arguing that the IRS regulations require submission of an entirely different form, Form 8832, to effectuate an entity-classification election. (MJOP at 16–21).

The second significant proposed amendment concerns the "assessed additional tax" component of Mr. Dixon's claim. The original Complaint alleged that the audit of the 2013 tax return was spurred by IRS review of Mr. Dixon's 2013 amended tax returns. (Compl. at 4). Mr. Dixon argues that, if he establishes that the IRS used the information in his unsigned forms to initiate an audit of his 2013 tax returns, the IRS should be barred from claiming that the unsigned forms are invalid. (*Id.*). The proposed amended complaint will alter the language relevant to the "assessed additional tax" claim to specify that the IRS's assessment of additional taxes meant that "the IRS accepted the reclassification of dividends to business income." (Mot. to Amnd at 6).

Like its counterpart, Rule 15(a) in the Federal Rules of Civil Procedure, RCFC 15(a)(1) allows parties to amend their pleading once as a matter of right no later than 21 days after serving the pleading. Alternatively, if the pleading to be amended is one that requires a response (such as a complaint), that pleading may be amended up to either (1) 21 days after the responsive pleading is filed; or (2) 21 days after a motion under RCFC 12(b), (e), or (f) is filed, whichever deadline is earlier. RCFC 15(a)(1)(B). Should a plaintiff miss this window of opportunity, they may further amend the pleading thereon only with the opposing party's written consent or "the court's leave." RCFC 15(a)(2).

Here, Dixon seeks to amend his Complaint, but the United States has already filed its Answer—a responsive pleading. Because the United States has filed its Answer, Mr. Dixon cannot amend the Complaint as a matter of course under RCFC 15(a)(1)(A). Neither can Mr. Dixon seek refuge in provisions of RCFC 15(a)(1)(B). (Pl.'s Reply to Mot. to Amnd., at 1–2, ECF No. 23). Although that Rule provides parties with the opportunity to amend their complaint within 21 days of service of certain motions, it excludes motions for judgment on the pleadings under Rule 12(c), the motion at issue here.[5] Even if the Court accepts Mr. Dixon's argument that the list of motions in RCFC 15(a)(1)(B) is non-exhaustive and should be extended to cover Rule 12(c) motions, RCFC 15(a)(1)(B) is only applicable in cases where the listed motions are filed *before* an answer is filed. *See* RCFC 15(a)(1)(B) (indicating that a party may amend its pleading once as a matter of course within 21 days after service of the pleading or after service of listed motion, "*whichever is earlier*.") (emphasis added). The United States answered Mr. Dixon's Complaint on January 22, 2021, before filing its Rule 12(c) motion. (*See* Answer, ECF No. 11). RCFC 15(a)(1)(B) does not give Mr. Dixon the right to amend his Complaint.

---

[5] One logical reason as to why Rule 15(a)(1)(B) would exclude Rule 12(c) motions is that, unlike the other motions listed in that rule, Rule 12(c) motions address the merits of a plaintiff's claims. All motions covered by the second clause of Rule 15(a)(1)(B) are instead commonly used to raise technical defenses that are unrelated to the underlying merits of the claim (these include motions to dismiss for lack of subject-matter jurisdiction, for insufficient process, improper venue, a motion to strike, etc.). By excluding motions for judgment on the pleadings, the RCFC embrace the same principle as the Supreme Court: that leave to amend shall be "freely given" if denial will cause the plaintiff to lose on "mere technicalities" and eliminate the opportunity to instead make "decisions on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

This leaves Mr. Dixon one final option: leave granted by the Court. RCFC 15(a)(2). Although requests for leave to amend complaints are to be liberally construed, the ultimate decision to grant or deny such request is discretionary. *Foman v. Davis*, 371 U.S. 178, 182 (1962). That discretion may be informed by many factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.*; *see also Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 335 (1971) (focusing on whether amending complaint will "serve the interests of justice"). Existence of any of the *Foman* factors is sufficient to deny a motion for leave to amend, "the theory being that the amendment would not be necessary to serve the interest of justice under such circumstances." *Nesselrod v. United States*, 127 Fed. Cl. 421 (2016) (citing *Spalding & Son, Inc. v. United States*, 22 Cl. Ct. 678, 680 (1991); *accord Hays v. United States*, 16 Cl. Ct. 770, 772 (1989) (noting that the criteria set forth in *Foman* "are in the disjunctive, i.e., satisfaction of one is sufficient to deny the motion").

The United States argues that Mr. Dixon's proposal "inject[s] completely new theories into the case," that "materially change [Mr. Dixon's] chief legal theory" regarding the foreign tax credit component of his claims. (Resp. to Mot. to Amnd. at 11, ECF No. 20). The United States also argues that the proposed changes to the "assessed additional tax" component of the Complaint, while less substantial, are futile because the Court lacks jurisdiction to consider that claim. (*Id.*). The Court agrees.

Where an amended complaint will not survive a motion to dismiss, the proposed amendment is futile. *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006); *Arensmeyer v. United States*, Case No. 21-154T, Doc. No. 22, slip op. at 2 (Fed. Cl. July 2, 2021). Confronted with the possibility of being denied leave to amend on the ground of futility, that party "must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods*, 464 F.3d at 1354–55. Mr. Dixon has not done so.

The filing of a proper claim with the tax collector as a prerequisite for filing a lawsuit has deep roots in the revenue laws of the United States. *Kings County Sav. Institution v. Blair*, 116 U.S. 200, 205 (1886). The requirement that a claim first be filed with the IRS prior to litigation prevents surprise, ensures adequate notice of the claim, provides the IRS an opportunity to correct its mistakes, and limits the scope of tax refund litigation. *P&G Co. v. United States*, 570 F. Supp. 2d 972, 974 (S.D. Ohio 2008) (citing Gerald A. Kafka, Rita A. Cavanagh, *Litigation of Federal Civil Tax Controversies* ¶ 16.02 (RIA 2008)).

The Court of Federal Claims has routinely relied on the "doctrine of substantial variance." That doctrine holds that "a ground for a refund that is neither specifically raised by a timely claim for a refund, nor comprised within the general language of the claim, cannot be considered by a court in a subsequent suit for a refund." *Mobil Corp. v. United States*, 52 Fed. Cl. 327, 331 (2002) (quoting *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983)). Most importantly, this rule, currently codified at 26 U.S.C. § 7422(a), dictates that a claim filed with the tax collector must establish *both* the factual *and* the legal bases of a claim for refund if it is to be later reviewed by the courts. *Id.*; *see also United States v. Felt & Tarrant Mfg.*

*Co.*, 283 U.S. 269 (1931). The substantial variance doctrine ensures that the Court's resources remain committed to reviewing only those grounds that the IRS has had the opportunity to consider, take a position against, and is willing to defend. *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). Proper amended complaints can expand upon the facts and circumstances that were "at least referenced in the original complaint," *The Centech Grp., Inc. v. United States*, 78 Fed. Cl. 658, 659 (2007). However, amended complaints cannot introduce new legal theories "not expressly or impliedly contained" in the original claim for refund before the IRS. *Lockheed Martin*, 210 F.3d at 1371. Amended complaints that introduce new legal theories are deemed futile under the substantial variance doctrine, as they would strip the Court of subject matter jurisdiction and the claim would not survive a motion to dismiss." *Yamagata v. United States*, 114 Fed. Cl. 159 (2014), *aff'd*, 603 Fed. Appx. 1009 (Fed. Cir., May 13, 2015); *Arensmeyer*, No. 21-154T, slip op. at 2 (2021).

      Mr. Dixon's operative refund claim before the IRS did not provide the Agency an opportunity to review whether Dixon Advisory Group had a recognized "statutory" default classification as a partnership. Mr. Dixon's claim explicitly communicated to the IRS that the company had paid him dividends in 2013 and 2014, and "*has since elected* to be federally taxed as a partnership." (Compl. Ex. F at 4, Ex. G at 4) (emphasis added). The IRS could not consider a claim that it was never presented with.[6] Because Mr. Dixon never claimed before the IRS that his tax refund claim was based on the company's "statutory default classification" as a partnership, it cannot now present that claim to the Court.

      The second noteworthy change in Mr. Dixon's proposed amended complaint relates to the assessed additional tax claim. Mr. Dixon's original Complaint stated that the IRS had assessed the additional tax by referencing Mr. Dixon's "self-reporting of additional income" on his unsigned 2013 amended tax return. (Mot. to Amnd. at 2–3). The proposed amended complaint instead asserts that the additional tax was assessed by referencing Mr. Dixon's "reclassification of dividends as business income." (Resp. to Mot. to Amnd. at 3–4). The United States argues that the proposed changes are futile because the additional details do not alter the United States' principal objection: that Mr. Dixon never submitted a refund claim for the assessed additional tax.  (*Id*; *see also* MJOP at 9). Mr. Dixon does not directly negate that challenge; he instead argues that the IRS effectively "processed" Mr. Dixon's amended tax return by assessing the additional tax and that this action by the IRS obviated the need for Mr. Dixon to submit a tax refund claim for that tax to establish jurisdiction. (Pl's Resp. at 18). The proposed amended complaint only clarifies this argument further by stating that the IRS processed Mr. Dixon's "reclassification of dividends as business income," as opposed to his "self-reporting of additional income." The Court does not need to address the merits of the

---

[6] Mr. Dixon's attempt to analogize this case to *The Centech Grp.*, 78 Fed. Cl. 658, 659 (2007), is unavailing. The Court in *Centech* exercised its discretion in granting the plaintiff leave to amend the Complaint in the context of a bid protest claim, without the need to address the application of the substantial variance rule. Mr. Dixon's reply to the United States' objection fails to provide any case law that would address the exact objection raised by the United States. *Kemin Foods, L.C.*, at 1354–5.

5

United States' jurisdictional challenge now. It suffices that the Court finds that the purposed changes are immaterial as to both the jurisdictional challenge raised by the United States and to deciding whether the IRS "processed" Mr. Dixon's amended tax returns, as he claims, or if so, what significance that would have. Therefore, the proposed changes are futile. *St. Paul Fire & Marine Ins. Co. v. United States*, 31 Fed. Cl. 151, 155 ("When futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments.").

When a proposed amendment would be subject to the same defect as the original Complaint, leave to amend may be denied. *See Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1333 (Fed. Cir. 2000) (affirming denial of leave to amend in a patent case when same claim construction would apply to plaintiff's amended complaint); *see also Alaska v. United States*, 15 Cl. Ct. 276, 280 (1988) (the Court may deny leave to amend the complaint if the amended complaint seeks to add information that has already been adequately addressed in the prior filing); *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1404 (Fed. Cir. 1989).

For the stated reasons, Plaintiff's motion for leave to file the first amended complaint (ECF No. 19) is **DENIED**.

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge