# In the United States Court of Federal Claims

No. 20-1258T
Filed: January 18, 2022

---

ALAN C. DIXON,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*.

---

*Tiffany Michelle Hunt*, Barnes & Hunt, PLLC, Dallas, TX, for Plaintiff.

*Patrick Phippen*, Trial Attorney, Tax Division, *David A. Hubbert*, Deputy Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, *Marry M. Abate*, Assistant Chief, United States Department of Justice, Washington, D.C., for Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**TAPP, Judge.**

Plaintiff, Alan C. Dixon ("Mr. Dixon"), challenges the Internal Revenue Service's ("IRS") denial of his tax refund. Mr. Dixon's Complaint asserts three claims: refund based on application of foreign tax credit, refund for "assessed additional tax," and refund based on adjustment of net investment income tax. The United States seeks judgment on the pleadings. The Court finds it lacks subject-matter jurisdiction over Mr. Dixon's assessed additional tax claim because Mr. Dixon never filed any administrative claims for that tax. Likewise, Mr. Dixon's net investment tax claim was not properly presented to the IRS and is, therefore, dismissed for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. Finally, Mr. Dixon did not follow the applicable IRS rules for classifying his business as a partnership, and therefore, is not entitled to foreign tax credits. Accordingly, the Court grants the United States' Motion for Judgment on the Pleadings.

## I.     Background

At this stage, the Court assumes that Mr. Dixon's factual allegations are true. *Crusan v. United States*, 86 Fed. Cl. 415, 418 (2009). Mr. Dixon is the CEO and managing member of Dixon Advisory, USA, a New York-based subsidiary of an Australian company formerly known as Dixon Advisory Group Pty Ltd. (Compl. at 1–3, ECF No. 1). On October 23, 2014 and October 13, 2015, Mr. Dixon filed his original 2013 and 2014 tax returns, respectively. (Def.'s App. ("DA") at 15, 19, ECF No. 18-1). The largest share of Mr. Dixon's income during those years included dividends from Dixon Advisory Group Pty Ltd. (Compl. Ex. F at 4–5, 12). In

2016, Mr. Dixon then realized that Dixon Advisory Group could be recognized as a partnership for U.S. federal income tax purposes, entitling Mr. Dixon to certain tax benefits. (Compl. at 3). Mr. Dixon believed that, should Dixon Advisory Group be treated as a partnership for tax purposes, the entity's income would flow through to Mr. Dixon as business income. (*Id.*) This would increase Mr. Dixon's reported business income and therefore his tax liability. (Pl.'s Resp. at 19, ECF No. 21). Yet, since Mr. Dixon paid Australian taxes on that income, he would be entitled to a foreign tax credit, reducing his American tax burden overall. (*Id.*). Consequently, Mr. Dixon could be entitled to a tax refund. (*Id.*; Compl. at 3).

In 2016, Mr. Dixon filed an Application for Employer Identification Number (Form SS-4) for Dixon Advisory Group Pty Ltd. with the IRS. (Compl. at 3). Soon after, the IRS formally notified Dixon Advisory Group of its new employer identification number ("EIN") by issuing a Notice CP575D. (DA at 11–13).

Subsequently, Mr. John Anthony Castro prepared, signed, and filed Mr. Dixon's amended tax returns (Form 1040X) for tax years 2013 and 2014. (Compl. at 3–4). Aside from seeking foreign tax credits, the amended tax returns included another separate tax refund claim. Portions of Mr. Dixon's income involved assets held in an Australian privatized social security fund, also known as the Australian superannuation fund. (Compl. Ex. F at 4). Mr. Dixon believed those funds to be exclusively taxable in Australia, and therefore, he asserted entitlement to a refund for that portion of his taxes. (*Id.*). Application of the foreign tax credit, in conjunction with an amendment to Mr. Dixon's net investment income tax, could have resulted in a net tax refund. (Compl. at 5–6). These 2013 and 2014 amended tax returns sought refunds in the amount of $137,656 and $1,588,653, respectively, each made up of a foreign tax credit claim and a net investment income tax claim. (Compl. Ex. F at 2, Ex. G at 2).

In 2017, the IRS audited Mr. Dixon's 2013 taxes related to the additional business income reported in the amended tax return. (Compl. at 4). As a result of that audit, the IRS assessed additional tax, along with a failure-to-pay penalty and additional interest. (DA at 16). On August 6, 2018, the IRS deducted those assessments from Mr. Dixon's 2017 tax year credit. (*Id.*).

In February of 2019, Mr. Dixon challenged both the IRS's denial of tax refunds and the assessment of additional tax. *See Dixon v. United States*, 147 Fed. Cl. 469 (2020). The Court dismissed all of Mr. Dixon's claims for lack of subject-matter jurisdiction because Mr. Dixon had not signed his amended tax returns, thereby failing to file a valid administrative refund claim with the IRS prior to filing the lawsuit. *Id*. The Court also found that Mr. Dixon's additional assessment claim was unreviewable because he had not filed an administrative claim before the IRS to challenge the collection of that tax. *Id*.

Four days after the Court dismissed Mr. Dixon's claims, Mr. Dixon submitted the same amended tax returns to the IRS again, this time after signing them. (Compl. at 4). These signed returns were identical to the unsigned returns in that they only sought refunds for the foreign tax credit and the net investment income tax and did not reference the assessed additional tax. (Compl. Ex. F at 2, Ex. G at 2). After the IRS did not respond to the signed amended tax returns, Mr. Dixon filed this lawsuit. (Compl. at 4).

## II.   Analysis

"After the pleadings are closed," a party may move for judgment on the pleadings. RCFC 12(c). A motion for judgment on the pleadings should be granted when "there are no material facts in dispute and the [moving] party is entitled to judgment as a matter of law." *Forest Labs., Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007); *see also Jacqueline R. Sims, LLC v. United States*, 600 F. App'x 760, 764, 2015 WL 328224, at *4 (Fed. Cir. 2015) ("A fact is material if it could 'affect the outcome of the suit under the governing law.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). Therefore, at this stage, the Court accepts Mr. Dixon's factual allegations as true. *Crusan*, 86 Fed. Cl. at 418. A plaintiff's legal assertions, conversely, do not receive this deference. *Garner v. United States*, 85 Fed. Cl. 756, 758–59 (2009).

The United States has waived sovereign immunity and given this Court jurisdiction, concurrent with district courts, to entertain tax refund suits under 28 U.S.C. §§ 1346(a)(1), 1491. This grant of jurisdiction to the Court is limited by other provisions of the Internal Revenue Code. *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008)).

First, a plaintiff must satisfy the full payment rule, which requires that the principal tax deficiency be paid in full. *See Shore v. United States*, 9 F.3d 1524, 1526–27 (Fed. Cir. 1993). Additionally, before seeking relief from the Court, the taxpayer must have "duly filed" a valid claim for refund with the IRS in accordance with the "the provisions of [internal revenue] law" and "the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). In addition, 26 U.S.C § 6511(a) imposes a timeliness requirement for tax refund administrative claims, requiring that all refund claims be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid," whichever is later. The Supreme Court has held that the statutory period for filing refund claims may not be tolled for equitable reasons. *United States v. Brockamp*, 519 U.S. 347 (1997).

### A.  Assessed Additional Tax

The Court cannot review Mr. Dixon's claim for assessed additional tax because Mr. Dixon did not file any valid administrative refund claims with the IRS for that tax, either formal or informal. It is undisputed that Mr. Dixon never filed a formal claim with the IRS for the assessed additional tax claim. (Def.'s Mot. for J. ("MJOP") at 9; Pl.'s Resp. at 18). Mr. Dixon filed his unsigned amended tax returns in April 2017 *before* the IRS assessed additional taxes in August 2017. (DA at 15–16, 20). Therefore, those unsigned returns only stated claims for the net investment income tax and the foreign tax credit. Likewise, in submitting signed amended

returns in 2020, Mr. Dixon only asserted entitlement to the net investment income tax refund and the foreign tax credit.[1] (Compl. Ex. F at 2, Ex. G at 2).

Mr. Dixon asserts that, despite the absence of a valid and timely formal administrative claim for the assessed additional tax before the IRS, the Court has jurisdiction to entertain the assessed additional tax claim under the informal claim doctrine. (Pl.'s Resp. at 13). Under this doctrine, administrative claims that are timely filed but defective will nonetheless be treated as valid claims if they adequately notify the IRS of the nature of a taxpayer's refund claim and are later perfected. *United States v. Kales*, 314 U.S. 186, 194 (1941). In essence, in some circumstances, the filing of an informal claim tolls the statute of limitations under § 6511 until the filing of a valid formal claim. The determination of whether a taxpayer has satisfied the requirements for an informal claim is determined on a case-by-case basis and is based on the totality of the facts. *See Newton v. United States*, 143 Ct. Cl. 293, 300 (1958); *Donahue v. United States*, 33 Fed. Cl. 600, 608 (1995).

Mr. Dixon urges that the unsigned tax returns in this case adequately notified the IRS of the assessed additional tax claim, and that the lack of formality in submitting that claim— namely, lack of the taxpayer's signature—was later perfected by submission of signed amended tax returns in 2020. (Pl.'s Resp. at 21). Mr. Dixon relies on the Supreme Court's decision in *Kales* in arguing that informal claim doctrine applies when the defective filing "has not misled the Commissioner and he has accepted and treated it as such." *Kales*, 314 U.S. at 194.

Mr. Dixon asserts that the IRS's only basis for assessing additional taxes in August 2017 was Mr. Dixon's unsigned amended tax returns. (Pl.'s Resp. at 18–21). Those returns reported revised income in the form of additional flow-through business income from Dixon Advisory. (*Id.*). Mr. Dixon contends that, because IRS used the information within the unsigned amended tax returns to initiate an audit of the income reported and assess the additional tax, the unsigned amended tax returns should constitute informal claims for the assessed additional tax. (*Id.*).

The Court grants Mr. Dixon the presumption that the unsigned amended tax returns formed the sole basis for the IRS's decision to assess additional taxes. However, even with that presumption, submission of the unsigned amended tax returns in 2017 preceded the payment of the assessed additional taxes in 2018 and therefore cannot serve as an administrative refund claim for that tax at all, formalities aside. *See Martti v. United States*, 121 Fed. Cl. 87, 99 (2015) (A return filed before payment of taxes cannot be a refund claim because until the disputed taxes are paid, there is "no amount to be refunded."). In other words, Mr. Dixon could not have filed an administrative refund claim with the IRS related to the assessed additional taxes, formal or informal, until he had first fully paid the assessed additional taxes. *Rock Island, Ark. & La. R.R. Co. v. United States*, 54 Ct. Cl. 22, 34 (1918) (finding that the cause of action for erroneous

---

[1] In fact, in the interim period between the filing of the two administrative claims, Mr. Dixon asserted before the Federal Circuit that there was "no need for [him] to submit an additional administrative claim to litigate the additional tax assessment," a testament to Mr. Dixon's costly misunderstanding of the applicable law. *Dixon v. United States*, No. 20-1584, Doc. No. 15 (Fed. Cir. July 20, 2020); *See Higgins v. Mississippi*, 217 F.3d 951, 954–55 (7th Cir. 2000) (judicial admissions in one case may be evidentiary admissions in another case).

assessment or collection of taxes does not accrue before payment of said taxes and claims for refund can "only be made after payment of the amount sought to have refunded"). Whether the unsigned amended tax returns caused the IRS to impose the assessed additional tax is immaterial. Mr. Dixon does not allege that he has filed any other administrative claims for a refund of the assessed additional tax after paying that tax. Without an administrative refund claim, and without opportunity for the IRS to review such claim, the Court lacks jurisdiction.[2]

Therefore, because Mr. Dixon did not pay the assessed additional tax before filing the unsigned refund claim with the IRS in 2017, the Court lacks subject-matter jurisdiction over Mr. Dixon's cause of action related to assessed additional tax irrespective of the informal claims doctrine.

The IRS had sent Mr. Dixon a "Notice of Additional Tax Due" and a subsequent "Notices for the Amount Due". (Pl.'s Resp. at 19). Mr. Dixon admits that neither notice "shed[s] light on the grounds for the additional assessed tax." (*Id*.). Mr. Dixon misapprehends the weight of this important admission. Before asking the Court to review the IRS's grounds for the assessed additional tax, Mr. Dixon was obligated to pay, *then* dispute those taxes. The purpose of that sequence is *precisely* to allow the IRS to "shed light on" their reasoning *before* Mr. Dixon asks the Court to review IRS's reasoning. The requirement that a tax refund suit be initiated only after the taxpayer timely files a formal or informal administrative claim is intended to "to limit the scope of any ensuing litigation to those issues which have been examined [by the IRS] and which [the IRS] is willing to defend." *Union Pac. R.R. v. United States*, 182 Ct. Cl. 103, 109 (1968).

Even if Mr. Dixon were correct that the unsigned amended tax forms caused the IRS to assess the additional tax, those returns, at best, could have notified the IRS that Mr. Dixon may, in the future, challenge any additional tax assessment related to those returns. Perhaps, because Mr. Dixon reported the additional income in order to receive tax credits, the IRS could have anticipated that assessing additional taxes as opposed to granting the requested refund could result in a tax refund claim by Mr. Dixon in the future. Yet, to satisfy the informal claim doctrine, it is not enough to show that the taxpayer provided the IRS with adequate notice that a potential claim for refund might someday ensue. *Barenfeld v. United States*, 194 Ct. Cl. 903, 912 (1971) (rejecting the application of the informal claim doctrine where the IRS could have known from "circumstantial evidence" that the taxpayer would ask for a tax refund in the future); *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 293 (1945) (it is not enough that the facts before the IRS might have notified it "in some roundabout way" that a potential future refund

---

[2] Claims before the IRS, formal or informal, preceding payment of the disputed tax can at best be viewed as claims for an abatement and not a refund. *Ertle v. United States*, 118 Ct. Cl. 57, 59 (1950) (claims for tax abatement, prior to full payment of the tax are insufficient to confer jurisdiction for the Court of Claims). The Court only has jurisdiction to review IRS's denial of claims for credit or refund of "an overpayment," not a mere assessment of additional taxes. *See* 26 U.S.C. § 7421(a) (barring the Court from hearing tax claims that involve restraining assessment or collection of taxes); *Shore*, 9 F.3d at 1525–27 (holding that "full payment" rule requires that taxpayer pay taxes assessed by IRS before bringing a tax refund claim in court); *accord Simmons v. United States*, 127 Fed. Cl. 153, 155 (2016).

claim can materialize); *American Rad. & Standard San. Corp. v. United States*, 162 Ct. Cl. 106, 114 (1963) (same).

Instead, the taxpayer can invoke the informal claim doctrine when the taxpayer not only notified the IRS of a claim but also adequality informed the IRS of the exact grounds for such claim. Even if the IRS accepted and processed the unsigned amended returns in order to assess the additional tax, Mr. Dixon still needed to pay them, then dispute the collection of those taxes and notify the IRS of his basis for seeking a refund. The mere fact that the IRS assessed the additional tax in response to forms submitted by Mr. Dixon is not enough to justify inaction by Mr. Dixon in failing to file an administrative claim for a refund of those additional taxes. *American Rad.*, 162 Ct. Cl. at 114 (finding that to satisfy the informal claim doctrine "[i]t is not enough that the [IRS] have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund"). Mr. Dixon has not filed either a valid formal or an informal claim for refund of assessed additional tax, and therefore, the Court lacks subject-matter jurisdiction to hear that claim.

### B. Net Investment Income Tax

Mr. Dixon failed to file a valid administrative claim with the IRS for his net investment income tax claim, and, therefore, that claim also should be dismissed for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. Mr. Dixon admits that the IRS never received a formal claim for the net investment income tax claim, but he asserts that the unsigned amended tax returns should qualify as informal claims. (Pl.'s Resp. at 21).

Mr. Dixon's unsigned returns cannot form the foundation of an informal claim before the IRS. The Internal Revenue Code bars a taxpayer from filing a suit for tax refund until a claim for refund has been "duly filed" with the IRS according to the regulations set out by the Secretary of Treasury. 26 U.S.C § 7422. These regulations expand on what it means for an administrative tax refund claim to be "duly filed." Treasury Regulations require that tax refund claims before the IRS "must be verified by a written declaration that is made under the penalty of perjury." 26 C.F.R. § 301.6402-2(b)(1). The regulation further mandates that a tax refund claim that does not comply with this requirement will not be considered "*for any purpose* as a claim for refund or credit." *Id*. (emphasis added). The United States argues that, by incorporating the phrase "for any purpose," the plain text of the regulation bars any unsigned tax refund claims from being considered for the purposes of the informal claim doctrine. (MJOP at 18). The Court agrees.

Mr. Dixon relies on the Supreme Court's decision in *Kales*, 314 U.S. 186, in arguing that the unsigned amended tax returns qualify as valid informal claims. (Pl.'s Resp. at 13–16). *Kales* involved a taxpayer who submitted a timely informal letter, rather than the correct IRS form, to request a tax refund. *Kales*, 314 U.S. at 191–193 The taxpayer later filed an untimely amendment that complied with the regulation and remedied that error. *Id*. In describing the tenets of the informal claim doctrine, the Supreme Court stated that "a [timely] notice fairly advising the Commissioner of the nature of the taxpayer's claim, which . . . does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim," if the "formal defects" are later remedied by another filing. *Id*. at 194. Mr. Dixon claims that because his unsigned amended tax returns provided the IRS with notice that he sought a tax refund, and because the amended tax returns laid out the legal and factual basis for that refund, his returns

6

qualify as informal claims under *Kales*, though unsigned. (Pl.'s Resp. at 13–16). That particular deficiency, Mr. Dixon claims, was later remedied by submitting the signed amended tax returns in 2020. (*Id.*).

A more careful reading of the Supreme Court's guidance in *Kales* undermines Mr. Dixon's reliance on that case. Most importantly, the Court elaborated on the scope of the informal claim doctrine by emphasizing that valid informal claims are *only* those that "[have] not misled the [IRS] and [have been] *accepted and treated*" by the IRS as valid claims. *Kales*, 314 U.S. at 194 (emphasis added). Tax returns that are unsigned, and therefore not made under the penalty of perjury, can never be accepted and treated as valid claims by the IRS and, as such, they cannot constitute informal claims under *Kales*. To be legally valid, a claim must be "duly filed" with the IRS, "according to the regulations" established by the Secretary of Treasury. 26 U.S.C. § 7422(a); *see also Clintwood Elkhorn Min. Co.*, 553 U.S. at 4 (2008) (to seek a tax refund "the taxpayer must comply with the tax refund scheme established in the [Internal Revenue] Code"). Those regulations state that any declaration that is not "verified" and is not "made under the penalties of perjury," is not "duly filed." *Hall v. United States*, 148 Fed. Cl. 371, 379 (2020) (addressing the requirements of Treas. Reg. § 301.6402-2(b)(1)). Because unsigned claims can never be deemed "duly filed" under Section 7422(a), the IRS would be prohibited from "accepting and treating as valid claims," requests not made under the penalty of perjury. *Sicanoff Vegetable Oil Corp. v. United States*, 149 Ct. Cl. 278, 285 (1960) (when the IRS is "not permitted by law" to pay a claim, it cannot "enlarge [its] legal authority" by considering that claim.); *see also Mobil Corp. v. United States*, 52 Fed. Cl. 327, 337 (2002) (citing *Finn v. United States*, 123 U.S. 227 (1887)) (finding that the IRS cannot waive the requirements of § 7422 or its regulations because it cannot "require the Government to make a payment that legally it was not obligated to pay").

Because the taxpayer signature requirement derives from statute, the IRS cannot waive those requirements. *See Angelus Milling Co.*, 325 U.S. at 296 (1945) (finding that although IRS could waive regulatory requirements in reviewing informal claims, it cannot waive "statutory requirements"). In other words, unsigned tax returns present a more serious deficiency than garden-variety technical deficiencies that are normally protected under the informal claim doctrine. *Barenfeld v. United States*, 194 Ct. Cl. at 908–9 (1971); *Wilson v. United States*, No. 18-408, 2019 WL 988600, at *4 (Fed. Cl. Feb. 27, 2019).[3]

Finally, Mr. Dixon asserts that even if the Court finds that he never adequately filed either a formal or informal claim, it should still review his claim because Section 7422(a)'s requirement that a tax refund claim be "duly filed" with the IRS prior to filing a lawsuit is not a "jurisdictional" provision. (Pl.'s Resp. at 21–26). As background, statutory provisions that are deemed "jurisdictional" divest the Court of the power to review claims that have not met statutory limitations. *Fort Bend Cnty v. Davis*, 139 S. Ct. 1843, 1849 (2019). If the provision is instead read to be a "claims-processing rule," the same statutory limitations are viewed as

---

[3] *See also* 26 U.S.C. § 6065 ("[e]xcept as otherwise provided by the Secretary, any return … shall contain or be verified by a written declaration that is made under the penalties of perjury."); 26 U.S.C. § 6061(a) ("[A]ny return, statement or other document required to be made . . . shall be signed in accordance with forms or regulations prescribed by the Secretary.").

"prudential perquisites." (*Id.* at 1845). With claims-processing rules, courts may still review claims that do not meet statutory limitations if they find that certain equitable principles such as waiver, forfeiture, estoppel, or equitable tolling apply.[4] *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008). Mr. Dixon asserts that for Section 7422(a) to be jurisdictional the text of the provision needs to include "jurisdictional language" or in the alternative be supported by "a long line of [Supreme] Court decisions" holding it to be jurisdictional. *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 81 (2009).

As Mr. Dixon notes, the Supreme Court recently applied this standard to hold that many administrative exhaustion provisions are not jurisdictional and should instead be treated as claims-processing rules. *See Gillespie v. United States*, 670 F. App'x 393, 395 (7th Cir. 2016) (collecting Supreme Court cases that construed similar provisions as claims-processing rules); (*see also* Pl.'s Resp. at 25). The United States, in turn, argues that treating Section 7422(a) as non-jurisdictional cannot be reconciled with the Supreme Court's decision in *United States v. Dalm*, 494 U.S. 596, 609 (1990), which found that Section 7422(a) divests the courts of subject-matter jurisdiction over untimely tax refund claims. *See also Sun Chem. Corp. v. United States*, 698 F.2d 1203, 1206 (Fed. Cir. 1983) ("It is a well-established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit.").

There is reason to believe that Section 7422(a) should be deemed jurisdictional. The cases cited by Mr. Dixon involve the Supreme Court's review of administrative exhaustion requirements in modern administrative schemes, outside of the context of tax and revenue collection. To this end, so far, none of the statutes held to be non-jurisdictional under the Supreme Court's administrative exhaustion jurisprudence implicate an administrative program with such a lengthy lineage in administrative claim requirements as tax and revenue collection. The Supreme Court's treatment of administrative tax claims as jurisdictional far pre-dates the current codification of that rule at 26 U.S.C. § 7422(a). *See Nichols v. United States*, 74 U.S. 122, 129–30 (1869) (finding that public interest behind "prompt collection of the revenue" bars the Court of Claims from ruling on tax refund claims when the "alleged errors and mistakes" were not communicated to the tax collector). For over 100 years, the Court in addressing the predecessor to Section 7422(a) has held that "[n]o suit can be maintained for taxes illegally collected unless a claim therefor has been made" with the tax collector "within the time *and in*

---

[4] "[H]arsh consequences" attend the jurisdictional brand, including the Court's duty to dismiss the case sua sponte at any stage should it find that the jurisdiction is not met. *United States v. Kwai Fun Wong*, 575 U. S. 402 (2015). Claims-processing rules, on the other hand, only "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

*the manner* pointed out by law []."[5] *Kings County Savings Institution v. Blair*, 116 U.S. 200, 205 (1886) (citing *Cheatham v. United States*, 92 U.S. 85 (1875)) (emphasis added).

Regardless, the Court need not determine this issue, given that Mr. Dixon's claims fail even if, as he urges, the signature requirement was merely a claims-processing rule. If Section 7422(a) is viewed as a claims-processing rule, that only means that its requirements are subject to equitable exceptions. *Bowles v. Russell*, 551 U.S. 205, 213 (2007) (claims-processing rules are subject to equitable exceptions and jurisdictional limits are not). Importantly, Mr. Dixon has not established that equitable exceptions apply in this case. The only equitable exception indirectly relied upon by Mr. Dixon is the waiver exception. As the Court has already addressed, because the signature requirement is a statutory requirement, the IRS could not have waived this requirement. Therefore, even if the Court were to find the requirements of Section 7422(a) to be a claims-processing rule, because the waiver exception cannot apply, Mr. Dixon's claim still should be dismissed for failure to state a claim upon which relief can be granted. RCFC 12(b)(6).

In summary, the Court need not decide whether the signature requirement of § 7422(a) is jurisdictional or a claims-processing rule. Under either doctrine the result is the same: Mr. Dixon's claim for refund of investment income tax must be dismissed.

### C. Foreign Tax Credit

Mr. Dixon also asserts entitlement to a tax refund based on his qualifications for the foreign tax credit. This claim also fails. Mr. Dixon would only be entitled to foreign tax credits

---

[5] The argument that Section 7422(a) should be viewed as jurisdictional also finds supports in a litany of cases from this Court's predecessor, the Court of Claims and the Federal Circuit. As early as 1917, the Court of Claims, relied upon the Supreme Court's decision in *Kings County Savings Institution*, to hold that complying with the specific statutory requirement to file an administrative tax refund claim before filing a lawsuit was "essential" and had been so "frequently held [to be] now practically an uncontroverted proposition." *Rand v. United States*, 52 Ct. Cl. 72, 74 (1917); *see also Factors' & Finance Co. v. United States*, 73 Ct. Cl. 707, 717 (1932) (taxpayer must file administrative claim for refund if "he desires to protect right to a judicial review"); *Morristown Knitting Mills, Inc. v. United States*, 95 Ct. Cl. 552, 553 (1942) (Court of Claims "is without jurisdiction" when no proper administrative claim filed pursuant to the revenue laws). The Court of Federal Claims has continued to adhere to this long line of binding precedent. *See e.g.*, *Speck v. United States*, 28 Fed. Cl. 254 (1992) ("to vest jurisdiction" in the United States Court of Federal Claims, plaintiff must first file administrative claim for refund with IRS). And finally, the Federal Circuit has also held that failure to comply with certain regulations promulgated under Section 7422(a) strips the courts of subject-matter jurisdiction. *See e.g.*, *Waltner v. United States*, 679 F.3d 1329, 1332 (Fed. Cir. 2012); *Stephens v. United States*, 884 F.3d 1151, 1156 (Fed. Cir. 2018); *but see Walby v. United States*, 957 F.3d 1295, 1299–301 (Fed. Cir. 2020) (Federal Circuit indicated receptiveness to revisit the question of whether Section 7422(a) is jurisdictional). Given this history, if the Court were to find Section 7422(a) to be jurisdictional, then Mr. Dixon's net investment income tax claim should be dismissed for lack of subject-matter jurisdiction because Mr. Dixon never properly filed a tax refund claim with the IRS for that tax.

on his business income if Dixon Advisory Group qualified as a partnership for tax purposes. Because Dixon Advisory Group could not qualify as a partnership at the time Mr. Dixon filed his administrative claim for foreign tax credit, his claim for a refund related to the foreign tax credit must be dismissed under RCFC 12(b)(6).

Prior to seeking foreign tax credits, Mr. Dixon submitted an Application for Employer Identification Number, or Form SS-4, to the IRS. (Compl. at 3). Mr. Dixon claims that by submitting the form he intended to "elect to treat" Dixon Advisory Group as a partnership. (*Id.*). While this may have been his belief, submission of Form SS-4 does not achieve this result.

Under Treasury Regulation § 301.7701-2(a), business entities with one owner are classified as corporations for tax purposes; those with more than one owner are classified as either a corporation or a partnership. *Id.* To determine whether a business entity with more than one owner should be treated as a corporation or partnership, the Treasury Regulations first set out a list of categorical definitions for entities that are immutably corporations. 26 C.F.R § 301.7701-2(b); *see e.g.,* § 301.7701-2(b)(8)(i) (any business entity based in Australia that is labeled "public limited company" is defined as a corporation). Business entities that are not covered by the categorical definitions of Section 301.7701-2(b) receive a "default classification" as either a corporation or partnership for tax purposes. The business entities can then elect to change that default classification. 26 C.F.R § 301.7701-3(a). Dixon Advisory Group is a "proprietary limited" company, a business formation not subject to the categorical definitions of § 301.7701-2(b). Therefore, the Court looks to Section 301.7701-3 to determine the default classification for Dixon Advisory Group.

In Australia, all members of a propriety limited company, such as Dixon Advisory Group Pty Ltd., enjoy limited liability. *See* Companies in Australia, State Library Victoria, https://guides.slv.vic.gov.au/companies/structures (last visited Jan. 13. 2021). Under Section 301.7701-3(b), if all members of a foreign entity have limited liability, that entity is classified as an "association," § 301.7701-2(b)(2), and every such association is, by default, a corporation, unless and until it elects to change that default classification to a partnership. §§ 301.7701-2(b)(2), -3(b)(2)(B); *see also* § 301.7701-3(a).

Treasury Regulations require entities to file Form 8832 to make a proper entity-classification election. § 301.7701-3(c). That regulation further states that an entity classification election "will not be accepted unless all of the information required by [Form 8832] and instructions, including the taxpayer identifying number of the entity, is provided on Form 8832." *Id.* (emphasis added). Form SS-4 is used to obtain the taxpayer identifying number referenced in this regulation. *See also* Reg. § 301.6109-1(d)(2)(i).

However, Mr. Dixon did not follow this process. In lieu of submitting Form 8832, Mr. Dixon avers he submitted a Form SS-4 to "elect to treat" Dixon Advisory Group as a partnership. (Compl at 3; Compl. Ex. C). The IRS received this form and corresponded in turn by assigning Dixon Advisory Group an employer identification number in accordance with the intent of the form. (DA at 11–13; Compl. Ex. C). Mr. Dixon operated under the understanding that merely filing the Form SS-4 would suffice in categorizing Dixon Advisory Group as a partnership for tax purposes. (Compl. at 3). Accordingly, Mr. Dixon proceeded to submit amended tax returns to request foreign tax credit without ever submitting a Form 8832. (Pl.'s Resp. at 29; *see also*

Compl. at 3 ("In accordance with his accepted IRS Form SS-4 treating Dixon Advisory Group as a Partnership, Plaintiff prepared [] amended tax returns for tax years 2012, 2013 and 2014 to reflect Dixon Advisory Group's corrected taxable status.")). Unsurprisingly, the IRS did not grant Mr. Dixon the requested foreign tax credit.

The Treasury Regulations and the guidance imprinted on Form SS-4 itself plainly require submission of Form 8832 as a necessary step for effectuating an entity classification. 26 C.F.R. § 301.7701-3(c)(1)(i)−(iii); *see also* DA at 4–7, Copy of Form 8832 (rev. Dec. 2013) (indicating that an entity "uses Form 8832 to elect how it will be classified for federal tax purposes.")). After receiving the Form SS-4, the IRS sent back a Notice CP575D confirming assignment of a new employer identification number. (Compl. at 3). Mr. Dixon's assumption that this correspondence effectuated a change in classification is misguided.

First, the content of that notice itself clearly communicated to Mr. Dixon that submitting Form SS-4 did not effectuate an entity-classification election. The Notice CP575D clearly communicated that "[c]ertain tax classification elections can be requested by filing Form 8832, Entity Classification Election. See Form 8832 and its instructions for additional information.". (DA at 11, Copy of Notice CP575D). To elect partnership tax treatment for Dixon Advisory Group, several additional (and significant) steps were required. For example, for business entities that are made up of numerous members, Form 8832 "must be signed" by each member "who is an owner at the time the election is filed," or a member with proper authorization on behalf of other members to apply for an entity-classification. 26 C.F.R. § 301.7701-3(c)(2). Mr. Dixon did not comply with that requirement.

In its response to the United States' Motion for Judgment on the Pleadings, Mr. Dixon attempts to provide alternative legal theories for why the company should be treated as a partnership under the plain language of 26 U.S.C § 701. (Pl.'s Resp. at 30–31). First, Mr. Dixon argues that Congress, in enacting a specific definition for "corporation" in Section 701(a)(3), unambiguously intended "every other kind of group of persons" to be considered as a partnership. (*Id*.). Mr. Dixon therefore asserts that the Treasury Regulations promulgated under Section 701 are invalid because they expand the definition of corporation beyond the statute's plain language. (*Id*.). Second, Mr. Dixon argues that, even if language of Section 701 was ambiguous, the Treasury Regulations do not reasonably interpret Section 7701. (*Id*.). *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Not to leave any stones unturned, the last two pages of Mr. Dixon's Response introduce yet another new legal theory as to why he should be entitled to relief: that the regulations violate the Non-Discrimination Article of the U.S.-Australia Income Tax Treaty. (Pl.'s Resp. at 32–34). Mr. Dixon asserts that under Treasury Regulation § 301.7701-3(b), even if all members of an entity have limited liability, the default classification of certain domestic and foreign business entities can differ. (*Id*.). Mr. Dixon argues that this stands in contravention of the Non-Discrimination Article of the U.S.-Australia Income Tax Treaty. (*Id*.); *see also* Article 23(1)(a), Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income, U.S.-Aust., Aug. 6, 1982, 35 U.S.T. 1999.

None of these theories—that Mr. Dixon was entitled to a tax refund under the plain language of Section 701 or by application of the U.S.-Australia Income Tax Treaty—were presented to the IRS. To the contrary, Mr. Dixon actively submitted forms and applications for

approval, such as Form SS-4, that were required pursuant to the same regulations he now labels as invalid. In fact, those claims never even appeared in Mr. Dixon's Complaint before this Court. It is well-established that the substantial variance rule bars taxpayers from presenting claims in a tax refund suit that "substantially vary" the legal theories and factual bases for the claim from those originally presented to the IRS. *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). Not only did Mr. Dixon fail to explicitly raise these challenges, but his conduct did not notify the IRS that his refund request would rest on these legal theories. *Edde v. United States*, 217 Ct. Cl. 690 (1978) ("It is not sufficient to put all the operative facts [of a refund claim] before the [IRS], if the claim fails to show the legal conclusion the taxpayer" intends to rely on); *Commercial Solvents Corp. v. United States*, 192 Ct. Cl. 339 (1970), *cert. denied*, 400 U.S. 943 (1970) ("imposition on the [IRS] of the burden of anticipating all grounds which taxpayer might ultimately advance in a judicial forum is contrary to the rationale underlying the variance rule."). Therefore, the substantial variance doctrine dictates that Mr. Dixon is barred from raising these challenges for the first time before this Court. *Burlington N. Inc. v. United States*, 231 Ct. Cl. 222, 224–5 (1982) ("Any ground for refund not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated.").

Mr. Dixon attempts to use his response to the United States' Motion for Judgment on the Pleadings as an opportunity to achieve the same goal as amending his Complaint. In addition to suffering from the same flaws that bar Mr. Dixon from amending his Complaint at this stage, Mr. Dixon's informal attempt at injecting these claims through responsive briefing runs afoul of the Court's other long-standing standard: new arguments that are raised for the first time in a response brief should be disregarded by the Court, "[a]s a matter of litigation fairness." *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002). Accordingly, the Court need not address the merits of these significantly different theories for relief.

### III.    Conclusion

For the stated reasons, the United States' Motion for Judgment on the Pleadings (ECF No. 18) is **GRANTED**. Mr. Dixon's assessed additional income tax claim is **DISMISSED** for lack of subject-matter jurisdiction. Mr. Dixon's net investment income tax claim is **DISMISSED** for lack of subject-matter jurisdiction, or alternatively as stated in the above analysis, for failure to state a claim upon which relief can be granted. Mr. Dixon's foreign tax credit claim is **DISMISSED** for failure to state a claim upon which relief can be granted. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge